**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOHN R. CROSKY,**

    **Petitioner,**                    **CASE NO. 2:09-CV-499**
                                        **JUDGE GRAHAM**
            **v.**                      **MAGISTRATE JUDGE KING**

**MICHAEL SHEETS, Warden,**

        **Respondent.**
                                **ORDER and__
                        __REPORT AND RECOMMENDATION__**

    Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254.  This matter is before the Court on the Petition, Respondent's Return of Writ,

Petitioner's Traverse and the exhibits of the parties.  For the reasons that follow, Petitioner's motion

to amend (Doc. 27) and Petitioner's  request for an evidentiary hearing and for a stay of proceedings

(*see* Doc. 29) are **DENIED.**  Respondent's motion to strike Petitioner's second supplemental

memorandum in support (Doc. 33) is **DENIED**.  The Magistrate Judge **RECOMMENDS** that this

action be **DISMISSED.**

**FACTS and PROCEDURAL HISTORY**

    The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this

case as follows:

            On May 5, 2004, a Franklin County Grand Jury indicted appellant
            with 17 counts alleging rape, gross sexual imposition, child
            endangering, and disseminating matter harmful to juveniles. All the
            counts involved appellant's alleged sexual abuse of J.S. [FN1] The
            indictment alleged 8 counts of rape in violation of R.C. 2907.02.
            These counts are Nos. 2, 4, 9, 10, 12, 13, 14, and 16. Each of the rape
            counts alleged that appellant engaged in sexual conduct with J.S. when
            she was less than 13-years old. Specifically, the indictment alleged
            that: count 2 occurred between August 24, 1997 and July 31, 1998 and
            involved vaginal penetration; count 4 occurred between August 1,

1998 and July 31, 1999 and involved vaginal penetration; count 9 occurred between August 1, 1999 and July 31, 2000 and involved digital vaginal penetration; count 10 occurred between August 1, 1999 and July 31, 2000 and involved vaginal penetration; count 12 occurred between May 1, 2000 and June 1, 2001 and involved cunnilingus; count 13 occurred between January 1, 2000 and June 1, 2001 and involved vaginal penetration; and counts 14 and 16 occurred between August 1, 2000 and July 31, 2001 and involved vaginal penetration.

[FN1] J.S. is the daughter of appellant's co-defendant and ex-wife, Julie Crosky. Appellant and Julie Crosky were married in May 2001, but by the time of trial, were divorced.

The indictment further alleged 7 counts of gross sexual imposition in violation of R.C. 2907.05 ("GSI"). These counts are Nos. 1, 3, 5, 6, 11, 15, and 17. Each of the GSI counts alleged that appellant had sexual contact with J.S. when she was less than 13-years old. Specifically, the indictment alleged that: count 1 occurred between August 24, 1997 and December 31, 1998; count 3 occurred between August 24, 1997 and July 31, 1998; count 5 occurred between August 1, 1998 and July 31, 1999; count 6 occurred between August 24, 1998 and December 31, 1999; count 11 occurred between August 1, 1999 and July 31, 2000; and counts 15 and 17 occurred between August 1, 2000 and July 31, 2001.

Count 7 of the indictment alleged that appellant, between August 24, 1998 and December 31, 2000, disseminated to J.S. material that is obscene or harmful to juveniles when she was less than 13-years old in violation of R.C. 2907.31. Count 8 of the indictment alleged that appellant, between August 1, 1999 and June 1, 2001, recklessly encouraged, used, or allowed J.S., who was under 18-years old, to be photographed for the production or dissemination of material that he knew or reasonably should have known was obscene, sexually-oriented matter, or nudity-oriented matter in violation of R.C. 2919.22 ("child endangering").

The indictment also charged appellant's wife, Julie Crosky, with one count of rape in violation of R.C. 2907.02 and two counts of child endangering in violation of R.C. 2919.22.

On May 11, 2004, appellant and Julie Crosky entered not guilty pleas to the charges. Attorney Douglas Shaw represented both appellant and Julie Crosky at this time. At a pre-trial hearing on July 7, 2004, however, attorney Mark Miller, a partner in the same law firm with

2

Shaw, signed an entry to continue appellant's trial. Shaw signed a similar entry for Julie Crosky. On the same day, Shaw filed a motion seeking to withdraw as counsel for Julie Crosky. Shaw indicated that he represented appellant and that Julie Crosky was eligible for appointed counsel. The trial court allowed Shaw to withdraw and appointed the public defender's office to represent Julie Crosky. Shaw continued to represent appellant.

A few months later, Julie Crosky requested new counsel. The trial court appointed attorney Myron Shwartz to represent her. On December 3, 2004, Shwartz filed a motion to separate Julie Crosky's trial from appellant's trial. Within days of that filing, Julie Crosky requested permission to dismiss Shwartz and to retain new counsel. The trial court allowed Shwartz to withdraw, and Julie Crosky retained Mark Miller, Shaw's partner, to represent her. Shaw continued to represent appellant.

Because of the potential for a conflict of interest, Julie Crosky and appellant signed and filed a form entitled "Waiver of Conflict." Appellant acknowledged that Shaw and Miller had explained to him that it would be advantageous to have separate counsel due to the potential conflict of interest. He further acknowledged that he had considered the matter and that he knowingly waived any potential conflict of interest. For the next few months, Miller represented Julie Crosky and Shaw continued to represent appellant.

The trial court held a hearing on April 14, 2005 to discuss the issue of legal representation. The trial court expressed its concern about Shaw and Miller representing the co-defendants because they practiced together in the same law firm. Shaw told the trial court that he and Miller discussed the potential conflict of interest and Shaw assured the trial court that they would represent their client's individual interests. Shaw further assured the trial court that the Croskys did not have antagonistic defenses to the charges. Both appellant and Julie Crosky acknowledged the potential conflict of interest but were satisfied with their representation and sought to waive the conflict of interest. Expressing its concern that defense counsel may not be able to foresee how the defenses might change during the course of the case, the trial court took the matter under advisement.

At a subsequent hearing on April 18, 2005, the trial court continued to express its concern that Shaw and Miller could not independently represent their respective clients without potentially harming their partner's client. The trial court posed the example of a situation where

3

the State would offer Julie Crosky a plea bargain in exchange for her testimony against appellant. How, the trial court asked, could Miller independently advise her to accept a deal, the result of which would harm appellant, his partner's client? Miller advised the trial court that he and Shaw had discussed the situation and that they still felt there was no conflict because the Croskys had a common defense to the charges. The trial court again continued the matter to further deliberate.

The next day, the trial court questioned Shaw and Miller about the exact status of their representation of the Croskys. The trial court was under the impression that Miller was representing Julie Crosky and that Shaw was representing appellant. Based on motions that had been filed jointly by Shaw and Miller on behalf of both Croskys, the trial court wondered if the status of their representation had changed. Shaw and Miller advised the court that they would be co-counsel in the case, jointly representing both Julie Crosky and appellant. Julie Crosky appeared surprised by this statement and requested a few minutes to reconsider her choice of counsel. The trial court informed her (and appellant) that it could not understand how two attorneys from the same law firm could effectively represent two clients with potentially adverse interests. After a brief recess, Julie Crosky asked the trial court to appoint her new counsel. The trial court accepted her request and removed both Shaw and Miller as her counsel. The trial court also cautioned Shaw that it still had concerns about his continued representation of appellant.[FN2]

[FN2] A month after the trial court's decision, appellant filed an Affidavit of Prejudice against the trial judge. The next day, the trial judge recused herself and the case was transferred to another judge.

On June 2, 2005, the trial court held a hearing and again expressed its concerns about Shaw's representation of appellant, given Shaw's previous representation of Julie Crosky in this matter. The trial court was concerned that information may have been shared between Shaw and Julie Crosky that could have been adverse to her but beneficial to appellant. The trial court advised Shaw that it would make a final decision about his continued representation of appellant at a later time.

At a hearing on August 24, 2005, the trial court ordered Shaw removed as appellant's counsel. Both Julie Crosky and appellant ultimately decided to represent themselves at trial. The trial court appointed standby counsel to assist them and continued the trial date for six months to allow them time to prepare for trial.

4

At trial, J.S. testified that she was born on August 24, 1988. She was 17-years old and a senior in high school when she testified. She met appellant in April 1998 when he started dating her mother, Julie Crosky. She was almost 10-years old at the time and she was in fourth or fifth grade. Appellant's relationship with Julie Crosky became serious and appellant began sleeping with Julie Crosky at her house. Apparently, J.S. often slept in her mother's bed. Appellant asked J.S. if she wanted to continue sleeping in the same bed with her mother. Although appellant's presence in her mother's bed made her uncomfortable, J.S. indicated she wanted to continue sleeping with her mother. While in bed one night, J.S. awoke to appellant and Julie Crosky having sex. After they were done, J.S. testified that appellant reached over to J.S. and placed his hand inside her underpants and touched her vagina. J.S. did not say anything and pretended to be asleep. She thought this incident occurred when she was in fifth grade.

J.S. testified that appellant touched her in a similar manner on other occasions. One incident she could recall occurred in the living room. Appellant, Julie Crosky, and J.S. fell asleep on an air mattress in front of the television. J.S. woke up to appellant and Julie Crosky having oral sex. When they were done, appellant reached over to J.S. and stuck his fingers inside her vagina. Again, she did not say anything and rolled over, pretending to be asleep. J.S. testified that this incident occurred when she was in sixth or seventh grade.

J.S. also testified that she had pillow fights and squirt gun fights with appellant. If she "won" the game, appellant would buy her things, or she would get to punch him as hard as she wanted. If appellant "won" the game, he would get a prize, which included him either touching her breasts or vagina or licking her vagina. J.S. recalled one specific instance when appellant, after winning a prize, was licking her vagina when Julie Crosky walked into the room. J.S. also remembered two occasions when appellant licked her vagina after she had gone to the bathroom.

J.S. testified to other specific acts but she could not recall the time frame of those acts. She testified that appellant attempted to put his penis into her vagina but that it never went inside her. She also testified that the night before that act, appellant used a vibrator on her in the middle of the night, although he placed it outside of her pants. She indicated that these incidents may have occurred when she was in the sixth grade.

J.S. testified that the sexual abuse by appellant began when she was in

5

fifth grade, after her school sent a letter home stating that the school was starting to teach sex education. In response to the letter, appellant and Julie Crosky showed J.S. drawings of body parts. J.S. was fine with this because she was happy to be prepared for what she was going to see in school. However, appellant and Julie Crosky also showed her magazines and videos of people having sex. She testified that some of the videos and magazines included images of a number of people having sex together at one time.

J.S. also testified that when appellant went out of town for work, he called her and asked her to take pictures of herself. She took pictures of herself clothed, but appellant then asked her if she could take pictures of herself naked. Although she felt uncomfortable doing this, appellant persisted and J.S. finally complied. J.S. gave the photos to Julie Crosky for mailing to appellant.

At trial, appellant denied that the alleged acts occurred and claimed that the charges were fabricated. Appellant cross-examined J.S. for several days about her allegations. He questioned her about her failure to tell anyone, including her friends, about the alleged abuse until years later. Appellant also showed J.S. a book/journal in which she denied having been sexually abused. Appellant also presented witnesses who testified that J.S. appeared to be a happy, nice girl.

The jury found appellant not guilty of counts 2 and 3, which alleged acts that occurred between August 1997 and July 1998. The jury found appellant guilty of the remaining 15 counts. [FN3] Following the trial court's adjudication of appellant as a sexual predator, it sentenced appellant to a total prison term of 30 years.

[FN3] Julie Crosky was convicted of two counts of child endangering. *See State v. Crosky*, Franklin App. No. 06-816, 2007-Ohio-6533.

*State v. Crosky*, No. 06AP-655, 2008 WL 169346, at *1-5 (Ohio App. 10th Dist. Jan. 17, 2008).

Petitioner filed a timely appeal, in which he asserted the following assignments of error with the

assistance of counsel:

Assignment of Error No. 1: The court of common pleas erred and deprived defendant-appellant of his right to counsel of choice as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when it disqualified his privately retained attorney (a) in the absence

6

of any evidence in the record that a potential conflict of interest existed after defense counsel's role had substantially changed from one of joint or simultaneous representation to one of successive representation, (b) without first conducting a hearing and issuing specific findings, (c) without engaging in an inquiry with him and his Codefendant to determine whether their written waivers were sufficient to cure any conflict that might exist, and/or (d) without giving due consideration to alternatives less drastic than disqualification of counsel.

Assignment of Error No. 2: Defendant-Appellant was denied his right to the assistance of counsel as guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when the trial court accepted his waiver of counsel without making a sufficient inquiry to determine that he fully understood and intelligently relinquished his right to counsel and that he possessed an adequate apprehension of the nature of the charges and statutory offenses included within them, the range of allowable punishments thereunder, any possible defenses that he may have to the charges and mitigating circumstances, and the facts essential to an understanding of the case against him.

Assignment of Error No. 3: Defendant-Appellant's convictions for rape, gross sexual imposition, endangering children, and disseminating material harmful to a juvenile are not supported by evidence sufficient to satisfy the requirements of the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 & 16 of the Ohio Constitution; or alternatively, are against the manifest weight of the evidence.

Assignment of Error No. 4: The jury's verdicts of not guilty as to Count 2 (rape based on vaginal penetration) and Count 3 (gross sexual imposition) of the indictment constitute a bar under the Double Jeopardy and/or Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 & 16 of the Ohio Constitution to Defendant-Appellant's convictions under Counts 4, 9, 10, 13, 14, and 16 (rape based on vaginal penetration) and Counts 1, 5, 6, 11, 15, and 17 (gross sexual imposition) for the reason that the State's failure to link the individual counts of the Indictment to distinct and differentiated incidents of each offense resulted in uncertainty as to what the jury actually found and such uncertainty must be resolved in his favor.

Assignment of Error No. 5: The prosecution of Defendant-Appellant

for multiple counts of rape and gross sexual imposition through the use of an indictment, bill of particulars, victim testimony, jury instructions, and verdict forms that failed to connect each count of the indictment to a distinct and differentiated incident of alleged sexual abuse (a) exposed him to conviction on the basis of facts not found by and/or not presented to the Grand Jury and further allowed the State unfettered discretion to extrapolate as many felony counts as it wished to charge over a four year time period, in violation of his rights under Art. I, Sections 10 & 16 of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution, (b) violated his right to be informed of the nature and cause of the individual accusations against him as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 & 16 of the Ohio Constitution, (c) deprived him of his right to defend himself as to each of the counts of the indictment as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 & 16 of the Ohio Constitution, (d) deprived him of the protections of the Double Jeopardy Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and (e) violated his right to an individualized jury determination of guilt as to each count of the Indictment as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 & 16 of the Ohio Constitution.

Assignment of Error No. 6: The following evidentiary and procedural rulings of the court during trial individually and/or in the aggregate deprived Defendant-Appellant of his right to a fundamentally fair jury trial, his right to confront and cross-examine his accuser, his right to present a meaningful defense, and his right to represent himself as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 5, 10 & 16 of the Ohio Constitution as follows: by allowing incompetent testimony; denial of a more specific bill of particulars; limiting time for cross-examination of the state's only witness; intemperate judicial behavior; judicial expression of bias; interference with use of standby counsel; inequitable number of preemptory challenges; preventing a joint-defense and physically separating co-defendant's [sic] during trial; denial of impeachment of hostile witness; denial of right to argue malicious prosecution; denial of right to present corroborating or demonstrative evidence; failure to appoint an investigator; failure to allow introduction of entire defense exhibit; improper restriction on voir dire; and the trial court giving erroneous legal advise.

Assignment of Error No. 7: The trial court violated Crim.R.6(E) and

8

deprived Defendant-Appellant of his right to exculpatory and/or impeachment evidence under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 & 16 of the Ohio Constitution when it refused to allow him to participate in an in camera inspection of the grand jury testimony and denied him use of the transcripts to impeach the alleged victim.

Assignment of Error No. 8: The trial court committed plain error and violated Defendant-Appellant's rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, which incorporates principles of the Ex Post Facto Clause of Article I, Section 10 of the United States Constitution when it sentenced him to a 30 year prison term that exceeded the "maximum" sentence which could be imposed under the laws in effect at the time of his offense without applying any sentence enhancement factors found to be unconstitutional in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. Alternatively, Defendant-Appellant was deprived of his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution as a result of appointed counsel's failure to raise a constitutional challenge to his sentence.

Assignment of Error No. 9: The aggregate 30 year prison term violated Appellant's rights under R.C. Chap. 2929 and his right of due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 & 16 of the Ohio Constitution, as the evidence does not support the imposition of maximum, consecutive prison terms. Per App.R. 5(C)(2), the aggregate prison term exceeds the maximum prison term for the most serious offense of conviction and appeals his consecutive prison terms pursuant to R.C. 2953.08(C). Also, the adjudication of Appellant as a sexual predator was entered without adequate notice under R.C. 2950.09(b)(2) to prepare for the hearing thereon and is not supported by the trial findings or by sufficient evidence.

Assignment of Error No. 10: The trial court violated R.C. 2945.75 and denied Defendant-Appellant his rights to due process and trial by jury under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 5, 10 & 16 of the Ohio Constitution, when it convicted him of, and sentenced him on, six third degree felony counts of gross sexual imposition (Counts 1, 5, 6, 11, 15, and 17), one second degree felony count of endangering

> children (Count 8), and one fourth degree felony count of
> disseminating matter harmful to juveniles (Count 7), in the absence of
> a jury verdict setting forth the degree of offense for each count or a
> statement that the required aggravating element had been found to
> justify a conviction for the greater degree of offense for each count.

*Id*. at *5-7. Petitioner attempted to raise additional assignments of error in a March 23, 2007,

document entitled "Judicial Notice;" however, the state appellate court refused to consider those

claims for failing to comply with Ohio App.R. 12(A)(2), and noting that Petitioner had previously

withdrawn his supplemental *pro se* assignment of error. *See id.* at *5 n.4. On January 17, 2008, the

appellate court overruled Petitioner's first, second and fourth through ninth assignments of error,

overruled in part and sustained in part his third and tenth assignments of error, affirmed his

convictions on counts 1, 5, 6, 7, 8, 9, 11, 12, 15, and 17, and reversed his convictions on counts 4 and

10, modifying such convictions to gross sexual imposition. The appellate court also reversed

Petitioner's convictions on counts 13, 14, and 16 and remanded the case to the trial court for re-

sentencing on counts 4 and 10 as offenses of gross sexual imposition and on count 7 as a first degree

misdemeanor form of the offense. *Id.* at *33. On January 17, 2008, the Ohio Supreme Court

dismissed Petitioner's subsequent appeal. *State v. Crosky,* 118 Ohio St.3d 1462 (2008).

Subsequently,

> [t]he trial court sentenced appellant to five years on the gross sexual
> imposition counts, six years on the endangering children count, ten
> years on the rape counts, and six months on the disseminating matters
> harmful to a juvenile count. Three of the gross sexual imposition terms
> and one of the rape terms were to be served consecutively to each
> other, with all other counts to be served concurrently with each other
> and concurrently to the consecutive terms, for a total term of
> incarceration of 25 years.

*State v. Crosky*, No. 09AP-57, 2009 WL 2579496, at *1 (Ohio App. 10th Dist. Aug. 20, 2009).

Through counsel, Petitioner again filed a timely appeal, in which he raised the following assignments

10

of error:

> [I.] Pursuant to the intervening decision of the United States Supreme Court in *Oregon v. Ice* (2009), --- U.S. ----, 129 S.Ct. 711, 172 L.Ed.2d 517, the Trial Court erred by imposing consecutive sentences without first making the factual findings required by Ohio Revised Code § R.C. 2929.14(E)(4) and § 2929.41. The severance of the aforementioned statutes in *State v. Foster* (2006), 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856, was void *ab initio*, and as a result the statutes remain in effect.

> [II.] The Trial Court violated Defendant Crosky's right to trial by jury by imposing non-minimum sentences.

> [III.] The Trial Court violated the Ex Post Facto Clause by imposing non-minimum sentences.

> The Trial Court violated Defendant Crosky's right to due process of law by imposing non-minimum sentences.

*See id.* at *2. Petitioner, acting *pro se*, also presented the following assignments of error:

> [V.] As ridiculously overbroad as they blatantly are (which, in and of itself, testifies quite clearly to their malicious and suspiciously overreaching fraudulence), the TIME FRAMES for each and every single count of the State's 20 count indictment against we co-defendants, were obviously and artificially created and manufactured by less than ethical prosecutors of State, OUTSIDE OF and actually MOST CONTRARY TO not only reality and to human possibility, but also and especially MOST CONTRARY TO the State's own Discovery and the time frames purported by their one and only witness, whom, for ulterior purposes expedient for the State, was never ever "shown the 20 indictment charges," filed in her name for the working the State's agenda! (Pretrial Transcript, February 22, 2006, at page 85-which explains quite precisely why the girl was so dumbfounded, when she learned, on that day, that the dubious State even charged HER OWN MOTHER with SEXUALLY RAPING HER!-not even as an Aiding and Abetting Complicitor, the R.C. 2923.03 Statute of which, is nowhere found in the indictment or Bill of Particulars!) It cannot be denied that it was with much premeditated duplicity and calculated artiface of the most criminal pedigree, that these indictment TIME FRAMES were UNLAWFULLY invented, charged, prosecuted, sentenced, and unbelievably "Affirmed" against this Appellant. For the verdicts and sentences imposed upon

11

Appellant, were not-in truth-supported by evidence sufficient to satisfy the requirements of the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and/or Article I, Sections 10 and 16 of the Ohio Constitution, AND INFINITELY LESS SUFFICIENT STILL to justify denying Appellant justice and relief under the Manifest Weight of Evidence Review. Furthermore, Appellant was also unlawfully denied the protections of the Double Jeopardy Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and/or Article I, Sections 10 and 16 of the Ohio Constitution, while those whom conspired and perpetrated those unlawful time frames of that unlawful indictment, thus arrogantly committed, against Justice and Public Administration, the multiple crimes of Falsification R.C. 2921.13; False Reports of Child Abuse R.C. 2921.32; Dereliction of Duty R.C. 2921.44; Perjury R.C. 2921.11; Tampering with Evidence R.C. 2921.12; Obstructing Justice R.C. 2921.32; Interfering with Civil Rights R.C. 2921.45; Intimidation R.C. 2921.03; Conspiracy R.C. 2923 .01; Complicity (Aiding and Abetting) R.C. 2923.03; and Engaging in a Pattern of Corrupt Activity R.C. 2923.31(E). And since this Court mocked this Appellant and implied me a liar, let's now see just how "truthful" is the State's " TRUE BILL " indictment. One thing is certain: This unlawful group of sentences of the trial court must be vacated, for this case, with its sentences is "Contrary to Law" R.C. 2953.08. It is void of any justice. It's a stain upon this State and its Judiciary. Indeed, one of the biggest and most cynical cover-ups conceived. In the hypocritical words of this cases' Assistant Prosecutor, Richard Termuhlen himself, "I would encourage you [as his last line to the jury that he personally tampered with] to follow your conscience, follow your oath, and follow the law. Thank you very much."

[VI.] The trial court deprived the Defendant/Appellant of his rights to due process and the protections of the Double-Jeopardy Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution, by the relitigation of Judicial fact-findings in the Resentencing process, already determined to be Unconstitutional and most insufficient as a matter of Law.

[VII.] The trial court denied Defendant-Appellant his rights to due process and trial by jury under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 5 and 10 of the Ohio Constitution, by imposing non-concurrent sentences.

*Id.* at *3.  Petitioner also filed, as a part of that appeal, the following motions:

> [A] June 15, 2009 motion for correction and modification of the record; June 15, 2009 motion to correct errors in the PSI report(s); July 7, 2009 motion to reconsider journal entry on state's motion to strike; July 7, 2009 motion to strike the state's indictment and the verdict forms based on indictment, the state's memorandum contra motion to certify a conflict, and the state's fraudulent memorandum of plaintiff-appellee opposing jurisdiction (to the Ohio Supreme Court) together with all falsified appellate state briefs in this case including the appellate court opinion based upon them all; and July 10, 2009 motion for a supplemental record to be certified and transmitted.

*Id.* at *1.  On August 20, 2009, the state appellate court denied Petitioner's motions and affirmed the judgment of the trial court.  *Id.*  On December 30, 2009, the Ohio Supreme Court dismissed Petitioner's subsequent appeal.  *State v. Crosky,* 124 Ohio St.3d. 1417 (2009).

Petitioner filed a "*Motion to Impose Valid Sentence*" in the state trial court, which motion was denied.  He thereafter filed an appeal, asserting that his sentences were void "for failure to comply with Statutory requirements regarding Post Release Control."  *See State v. Crosky,* No. 10AP-399, 2010 WL 4264443, at *1 (Ohio App. 10th Dist. Oct. 28, 2010).  On October 28, 2010, the appellate court affirmed the trial court's decision.  *Id.*  It appears that Petitioner filed an appeal from that decision, but the status of that appeal is not clear from the record.  *See Exhibits to Motion for Stay.*

Petitioner also pursued post conviction relief in the state trial court while his direct appeal was pending.  *Exhibits 25-27 to Return of Writ.*  It appears that the trial court has never issued a ruling on that matter.

On June 17, 2009, Petitioner filed the *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He alleges that he is in the custody of the Respondent in violation of the Constitution of the United States based upon the following grounds, repeated here verbatim:

13

1.  Entire Case of the State is Contrary to Law – most highly fraudulent and unlawful through and through.   And this Defendant/appellant assures this Court he can back up what he says in this "Ground One" of this Federal Petition.

2.  Trial Court unconstitutionally removed Defendant's long-retained counsel (of almost 2 years) from his case, depriving Defendant of his right to counsel and retained counsel of choice.

3.  Denied right to assistance of Counsel when trial court wrongly informed Defendant of potential penalties for alleged crimes, and thereafter also abusively accepted a waiver of counsel without making sufficient and dutiful inquiry to properly determine whether Defendant (without any appointed counsel present), fully understood the matter before feeling compelled to relinquish his right to counsel once the court already removed his long-retained attorney over his vehement objections.  (Defendant no longer trusted the abusive court to pick his trial-attorney for him.)

4.  Insufficient evidence to support convictions to satisfy requirements of the Due Process Clauses of Constitutional Amendments – and those convictions are definitely against the Manifest weight of evidence "hands down."  Indictment faulty & insufficient.

5.  The repressed memories of an alleged sexual abuse victim (especially one whom evidence strongly suggests was secretly hypnotized outside of the knowledge of the defense, and whose trial testimony overwhelmingly differs from both State Discovery and facts of reality that can be demonstrably proven), do not provide a sufficient evidentiary basis under the Due Process Clauses, to support and sustain such wrongful convictions, based upon the "new memories" of the witness, whose perjuring tales at the time of trial, vastly differ from those presented to the grand jury, upon which the counts of the indictment are based.  (In plain English, this petitioner was convicted over "new tales" at trial, never before heard by even the grand jury itself!)  In the absence of any independent cooberation [sic], and without any expert testimony to afford the jury a basis upon which to better understand this psychological chaos – that has outright State duplicity and deception as an essential part of its mixture – due process was flatly denied this petitioner.

6. The prosecution failed through their indictment, bill of particulars, witness testimony, jury instructions, and verdict forms, to connect each count of the indictment to a distinct and differentiated alleged

14

incident.

7. When the defendant is indicted for multiple, undifferentiated counts charging the same crime and the jury returns a split verdict of guilty as to some counts and not guilty as to others, the Double Jeopardy and Due Process Clauses of the Constitution require the vacation of all the confused convictions.

8. Defendant was denied his right to a truly fair trial in a fair tribunal before an impartial judge with no actual bias against him, and the right to fully confront and cross-examine his accuser– thus rendering the defendant's meaningful confrontation and fair jury verdicts LITERALLY IMPOSSIBLE!

9. A trial court does not have discretion to withhold grand jury testimony containing material that may be used to impeach a prosecution witness. (Especially one whom has blatantly perjured herself upon the witness stand; and especially a grand jury transcript that no doubt reveals duplicity on the part of the state prosecutors and complicitors.

10. The sentencing court violated the Due Process Clause and the Ex Post Facto Clause of the U.S. Constitution, when it unlawfully sentenced him to a 30-year prison term that exceeded the "maximum" sentence which could be imposed under laws in effect at the time of the alleged crimes, without applying any sentence enhancement factors required by law to justify the imposition of both the maximum prison terms and the consecutive sentences imposed upon the defendant. Also the adjudication of this petitioner as a sexual predator was also unlawfully entered without adequate notice; a proper hearing on the matter; nor is it supported by the trial findings or by sufficient evidence at all! Furthermore, this petitioner suffered the consequences of ineffective assistance of counsel when the court-appointed sentencing counsel failed to raise an adamant objection to the court's imposition of consecutive non-minimum prison terms in case alleging offenses committed PRIOR [to] Ohio's FOSTER DEBACLE.

It is the position of the Respondent that Petitioner's claims are procedurally defaulted or without merit.

## REQUEST TO AMEND and MOTION FOR A STAY

On February 16, 2011, Petitioner filed a request for leave to amend the petition to include

additional legal authority in support of his claims.  Doc. 27.  Respondent opposes Petitioner's request.

Doc. 28.  Petitioner has filed a supplemental memorandum in response, in which he complains that

the state trial court has yet to issue a decision on his February 5, 2007, petition for post conviction

relief and that Respondent has filed a fraudulent Return of Writ.  Doc. 30.  Petitioner also has filed

under seal a second supplemental memorandum in support of his motion for leave to amend.  Doc.

32.[1]    Petitioner filed his habeas corpus petition on June 17, 2009.  He had more than adequate

opportunity, prior to February 16, 2011, to file a memorandum in support of his claims.  Further, most

of Petitioner's claims appear to be procedurally defaulted or fail to present issues appropriate for

federal habeas corpus relief.  The remainder of Petitioner's claims have been adequately briefed in

the Ohio Court of Appeals. All of these documents are a part of the record and are available for

review by this Court.  Additionally, Petitioner already clearly has set forth the nature of his claims

in his habeas corpus petition and lengthy Traverse.  The Court needs no additional legal authority to

resolve Petitioner's claims.  Petitioner may, if he so desires, provide any additional authority or

arguments in support of his claims in any objection that he might file to this *Report and

Recommendation*.   Petitioner's request for leave to amend his petition (Doc. 27) is therefore

**DENIED.**

In his Reply to Respondent's opposition to the request to amend, Petitioner asks that the Court

stay proceedings so that he may "rightly and fully rebut and refute the other 'bad faith' falsifications

---

[1]  In his second supplemental memorandum in support, Petitioner argues at length that he is actually innocent of the charges against him.  He alleges that the State unlawfully hypnotized the alleged victim and altered her mind such that she was unable to recollect the truth.  Referring to portions of the trial transcript, and other documents attached as exhibits to his memorandum, Petitioner argues that "exculpatory time frames" establish his actual innocence.  All of these arguments and attached exhibits will be considered in support of claim one of the habeas corpus petition, in which Petitioner raises these same arguments.

16

of the record by the State." Doc. 29.  Petitioner's request for a stay (Doc. 29) is **DENIED**.  The record reflects no basis for a further stay of proceedings.  Although the state trial court apparently has yet to rule on Petitioner's state post conviction petition, Petitioner argues in those proceedings that he was unable to effectively present a defense after the trial court disqualified Attorney Shaw and that he was denied his right to a speedy trial.  *See Exhibits 25, 26 to Return of Writ.*  These claims are not at issue in these proceedings.

The Court addresses Petitioner's claims out of order for ease of review:

### CLAIM ONE

In claim one, Petitioner asserts that his convictions are "contrary to law."  In support of this claim, he contends that allegations against him were false, that the alleged victim was hypnotized and "unlawfully manipulated," that the indictment was fraudulent and that appellate review "unlawful." *Petition.*  Petitioner argues at length that the alleged victim's testimony was the product of "relentless State tactics of witness tampering" and that his convictions are therefore invalid. *Traverse*, Doc. 29.

In short, Petitioner asserts that he is actually innocent of the charges.  This claim, however, fails to present an issue appropriate for federal habeas corpus relief.  *See Herrera v. Collins,* 506 U.S. 390, 400 (1993).

> A claim of actual innocence "is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).... [T]his actual innocence "gateway" has limited application. *See Schulp v. Delo,* 513 U.S. 298, 321-22, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (explaining that the fundamental-miscarriage-of-justice exception was intended to remain rare and only be applied in the extraordinary case); *Sawyer v. Whitley*, 505 U.S. 333, 338, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992) (noting that the exception may be used

> to reach the merits of: "(a) successive claims that raise grounds identical to grounds heard and decided on the merits in a previous petition; (b) new claims, not previously raised, which constitute an abuse of the writ; or (c) procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims") (emphasis in original). These bars to habeas petitions are premised on the Court's concerns for the " 'finality, comity, and conservation of scarce judicial resources.' " *House v. Bell*, No. 04-8990, 2006 U.S. LEXIS 4675, at *33 (June 12, 2006) (quoting *Schlup*, 513 U.S. at 324).

*Artiaga v. Money,* 2006 WL 1966612, at *5 (N.D. Ohio July 11, 2006).

> "Federal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). The guilt or innocence determination in state criminal trials is "a decisive and portentous event." *Wainwright v. Sykes,* 433 U.S. 72, 90 (1977). "Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens." *Ibid*. Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence.

*Herrera*, 506 U.S. at 401. *See also Wright v. Stegall*, 2007 WL 2566047, *2-3 (6th Cir. Sept.5, 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that petitioner's claim is not entitled to relief under available Supreme Court precedent").

Claim one, which the Court construes as presenting a claim of actual innocence, is without merit.

## CLAIM FOUR

In claim four, Petitioner asserts, *inter alia*, that his convictions are against the manifest weight of the evidence. The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without proof sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v.*

18

*Engle*, 703 F.2d 959, 969 (6th Cir.1983). In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In reviewing a sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence and the credibility of the witnesses. *Jackson,* 443 U.S. at 319; *Walker*, 703 F.2d at 969.

Under Ohio law, a claim that a verdict was against the manifest weight of the evidence – as opposed to one based upon constitutionally insufficient evidence – requires the state appellate court to act as a "thirteenth juror" and to review the entire record, weigh the evidence and consider the credibility of witnesses in order to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida,* 457 U.S. 31(1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, any claim that petitioner's conviction was against the manifest weight of the evidence cannot be considered by this Court.

Claim four is without merit.

## CLAIM FIVE

In related claim five, Petitioner asserts that "repressed memories" of the alleged victim were constitutionally insufficient to sustain his convictions.  Petitioner raised this same claim in the Ohio Court of Appeals in arguing that his convictions were against the manifest weight of the evidence. Although Respondent has addressed claim five as an independent claim on the merits, the state

appellate court considered Petitioner's arguments in claim five in the context of determining whether

his convictions were against the manifest weight of the evidence:

> Although appellant highlights a number of alleged inconsistencies in J.S.'s testimony, the jury heard her testimony firsthand and could evaluate her credibility. We cannot say that the jury clearly lost its way in making this decision. While J.S. was not very specific in describing the criminal conduct, her testimony was generally consistent, and we cannot say that the jury's verdict reflected a manifest miscarriage of justice. The jury obviously chose to believe J.S.'s accusations and disbelieve appellant's denials. This was within the province of the jury.

*State v. Crosky,* 2008 WL 169346, at *19.

Petitioner argued before the Ohio Court of Appeals, essentially, that the testimony of the

alleged victim was unworthy of credit because she had previously denied any sexual abuse and had

no recall of any sexual abuse, but had recently recalled details of repressed memories of her sexual

abuse.  *See Exhibit 17 to Return of Writ,* at 29-30.  In his appeal to the Ohio Supreme Court,

Petitioner raised the claim as an independent proposition of law as follows:

> The repressed memories of an alleged sexual abuse victim do not provide a sufficient evidentiary basis under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. . . to support convictions for rape and other indicted offenses in the absence of independent corroboration as well as expert testimony affording the jury a basis upon which to understand the phenomenon of memory repression and to evaluate the reliability of the testimony derived from such memories.

*Exhibit 22 to Return of Writ*.  Although Petitioner made these same arguments on direct appeal, he

did not raise the arguments apart from his claim that his convictions were against the manifest weight

of the evidence.  Accordingly, Petitioner did not properly preserve any other claim for federal habeas

corpus review.  *See McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000)(a claim is "fairly

presented" to the state courts only where the petitioner asserts both the factual and legal bases for the

claim).  As discussed *supra*, a claim based on the manifest weight of the evidence is not appropriately considered in these proceedings.

Petitioner also argues at length that he did not learn, until two years after his convictions, that prior to trial the State "secretly engaged" the alleged victim as a stolen captive, isolated under State control in order to "drug and hypnotize the girl to permanently delete and alter her original memories that they might be altogether replaced with new memories of State that would fit their agenda for the John Crosky trial." *Traverse*, at 7.  In support of this allegation, Petitioner refers to an alleged 2005 email.  *See id.*  This Court, however, is unable to locate any evidence that supports Petitioner's allegations in this regard.

Claim five is without merit.

## CLAIM TEN

In claim ten, Petitioner asserts, *inter alia*, that the trial court improperly adjudicated him a sexual predator.  This alleged violation of Ohio law likewise fails to present a claim warranting federal habeas corpus relief.  A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States.  28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure.  *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir.1988). " '[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure' " in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir.1985)). Only where the error resulted in the denial of fundamental fairness

will habeas relief be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988). Such are not the circumstances here.

Further,

> [t]he Sixth Circuit has held that a prisoner challenging the application of Ohio's sexual predator law, even a prisoner who is currently incarcerated, fails to satisfy the "in custody" requirement necessary to obtain habeas relief. *See Leslie v. Randle*, 296 F.3d 518, 520-22 (6th Cir.2002) (reasoning that Ohio's sexual-predator statute places no constraints on a person's movement or ability to engage in legal activities); *accord Cox v. Brunsman*, 2008 U.S. Dist. LEXIS 78799, 2008 WL 4185958, (S.D. Ohio Sept.5, 2008); *see also Thomas v. Morgan,* 109 F.Supp.2d 763, 767 (N.D. Ohio 2000) ("[T]he classification of a sex offender as a sexual predator is a collateral disability resulting from a conviction and thus does not satisfy the 'in custody' requirement of federal habeas corpus.")

*Jones v. Beightler*, No. 5:08-CV-1479, 2009 WL 1652131, at *9 (N.D. Ohio June 10, 2009).

Claim ten is without merit.

## PROCEDURAL DEFAULT

It is the position of the Respondent that Petitioner has procedurally defaulted portions of claim four and claims seven through ten.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless,* 459 U.S. 4, 6 (1982) ( *per curiam* ); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of

federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a Court must undertake a four-part analysis when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, the Court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court determines that the petitioner failed to comply with an adequate and independent state procedural rule, then the petitioner must demonstrate good cause for his failure to follow the procedural rule as well as actual prejudice from the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir.1985).

Respondent contends that Petitioner has waived claim four by failing to present his claim of insufficiency of the evidence to the Ohio Supreme Court. However, Petitioner argued on appeal to the Ohio Supreme Court that, without photographs, testimony of the alleged victim was constitutionally insufficient to sustain his convictions of child endangering. *See Exhibit 22 to Return of Writ.* To that extent, Petitioner has preserved this claim for federal habeas corpus review. Because Petitioner did not otherwise assert on appeal to the Ohio Supreme Court that the evidence was constitutionally insufficient to sustain his remaining convictions, any additional arguments regarding

insufficiency of the evidence have therefore been waived.

Petitioner may now no longer present additional claims to the Ohio Supreme Court under Ohio's doctrine of *res judicata*. *See State v. Cole*, 2 Ohio St.3d 112 (1982) ; *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967). The state courts were never given an opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default.

The State of Ohio has a rule that claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*. The Court finds that Ohio's *res judicata* rule is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson,* 501 U.S. 722, 732-33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia,* 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348-351 (1984); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers,* 377 U.S. 288, 297 (1964); *Jamison v. Collins* (6th Cir. 2000); *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole,* 2 Ohio St.3d at 112; *State v. Ishmail,* 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* does not rely on or otherwise implicate federal law. Accordingly, this Court is satisfied from its own review of relevant case law

24

that the *Perry* rule is an adequate and independent ground for denying relief.

Petitioner has waived all of claim four, except to the extent that he argues that the evidence was constitutionally insufficient to sustain his convictions of child endangering.

In claim six, Petitioner asserts that the prosecution failed "to connect each count of the indictment to a distinct and differentiated alleged incident." *See Petition*. The state appellate court reviewed this claim for plain error only due to Petitioner's failure to object at trial:

> [A]ppellant contends that the indictment charging him with multiple counts of rape and GSI violated his constitutional rights because it did not connect each count with a distinct and differentiated incident of alleged sexual abuse. We disagree.
>
> We first note that appellant did not object to the indictment on these grounds in the trial court. Crim.R. 12(C)(2) requires a defendant to object to the indictment before the trial court. The " 'failure to timely object to the allegedly defective indictment constitutes a waiver of the issues involved.' " *State v. Schneider*, Medina App. No. 06CA0072-M, 2007-Ohio-2553, at ¶ 20, *quoting State v. Biros* (1997), 78 Ohio St.3d 426, 436, 678 N.E.2d 891; *State v. Brady*, Cuyahoga App. No. 87854, 2007-Ohio-1453, at  ¶ 139. Thus, appellant's failure to object to the *indictment in the trial court waives all but plain error. State* v. *Carries,* Brown App. No. CA2005-01-001, 2006-Ohio-2134, at ¶ 11; *State v. Yaacov,* Cuyahoga App. No. 86674, 2006-Ohio-5321, at ¶ 14. Therefore, we will review this assignment of error under a plain error standard.
>
> Appellant, relying on *State v. Vitale* (1994), 96 Ohio App.3d 695, 645 N.E.2d 1277, contends that the indictment violates his right to be tried only for the crimes on which the grand jury found probable cause. While we agree that *Vitale* stands for the proposition that a defendant can be indicted only for the crimes on which the grand jury found probable cause, that proposition is inapplicable here. In *Vitale,* the court found error in the trial court's decision to allow an indictment to be amended to change the date of a charged theft offense. This amendment, the *Vitale* court reasoned, created the risk that the defendant could be convicted of an offense that was not presented to the grand jury. *Id*. at 699, 645 N.E.2d 1277. There is no such concern here, as the State did not amend the indictment against appellant. *Vitale* is inapplicable to the present case, and this portion of

25

appellant's fifth assignment of error is overruled.

*State v. Crosky,* No. 06AP-655, 2008 WL 169346, at *20.

The United States Court of Appeals for the Sixth Circuit has held that plain error review does not constitute a waiver of a state's procedural default rules. *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir.2000).

> Ohio has a contemporaneous objection rule under which an appellant who fails to object waives later review of the issue unless plain error can be shown. *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004), *cert. denied*, 544 U.S. 1003, 125 S.Ct. 1939, 161 L.Ed.2d 779 (2005) (citing *State v. Smith*, 89 Ohio St.3d 323, 332, 731 N.E.2d 645 (2000)). The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice. *Id.; Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Stojetz v. Ishee*, 2006 WL 328155 *12 (S.D. Ohio Feb. 10, 2006).
>
> A state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default. *Williams*, 380 F.3d at 968; *Hinkle*, 271 F.3d at 244. The federal court, in determining whether a state court has relied on a procedural rule to bar review of an issue, examines the latest reasoned opinion of the state courts and presumes that later courts enforced the bar instead of rejecting the claim on the merits. *Hinkle*, 271 F.3d at 244 (citing *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)).

*Adams v. Bradshaw,* 484 F.Supp.2d 753, 771 (N.D. Ohio 2007). Applying this same reasoning, this Court concludes that petitioner has waived the right to present claim six in these proceedings.

In claim eight, Petitioner asserts, *inter alia*, that he was denied a fair trial due to judicial bias. Respondent argues that Petitioner has procedurally defaulted this claim by failing to raise the issue on direct appeal. The Court of Appeals, however, did address at least aspects of Petitioner's allegation of judicial bias on the merits. Such allegation may therefore be considered in these

proceedings.

In claim nine, Petitioner asserts that the trial court abused its discretion by refusing to permit him to use grand jury testimony as impeachment evidence at trial. Petitioner argued before the Ohio Court of Appeals that, in doing so, the trial court violated Ohio Criminal Rules and deprived him of his right to exculpatory or impeachment evidence. *See Exhibit 16 to Return of Writ*. This issue presents a claim regarding the alleged violation of state law, which fails to provide a basis for federal habeas corpus relief. *See* 28 U.S.C. § 2254(a).

It is true that Petitioner referred to federal cases to support his argument in this regard. Those cases, however, concerned the right of a federal defendant to inspect and use grand jury testimony as impeachment evidence at trial and did not concern a prosecutor's constitutional duty to disclose material exculpatory evidence to a criminal defendant prior to trial under *Brady v. Maryland*, 373 U.S. 83 (1963). Petitioner never referred to *Brady*, the seminal case regarding a prosecutor's duty to disclose exculpatory evidence. The state appellate court likewise did not address any claim under *Brady:*

> Appellant contends in his seventh assignment of error that the trial court erred in handling the grand jury testimony of J.S. Again, we disagree.
>
> Before trial, appellant sought the grand jury testimony of a detective that he claimed lied to the grand jury. At some later time, J.S.'s testimony became the focal point of appellant's request. On the second day of trial, the trial court declined to provide appellant a copy of J.S.'s grand jury testimony. The trial court could not identify any reason to provide him with the transcript. Subsequently, the trial court indicated that it reviewed J.S.'s grand jury testimony and found no inconsistencies between it and her trial testimony.
>
> Disclosure of grand jury testimony, other than that of the defendant or co-defendant, is controlled by Crim.R. (6)(E). *State v. Greer* (1981), 66 Ohio St.2d 139, 420 N.E.2d 982, paragraph one of the syllabus.

27

The release of such testimony for use during trial is within the trial court's discretion. *Id.* The term abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore,* supra. An accused is not entitled to grand jury testimony during trial unless the ends of justice require it and there is a showing that a "particularized need" for disclosure exists. *Greer,* at paragraph two of the syllabus. The burden to demonstrate a particularized need is on the defendant. *State v. Roberts* (1976), 50 Ohio App.2d 237, 362 N.E.2d 1003.

At trial, appellant failed to make any showing of a particularized need for the grand jury testimony. He now claims a particularized need for the grand jury testimony based upon alleged inconsistencies between J.S.'s trial and grand jury testimony. Appellant contends that inconsistencies in J.S.'s trial and grand jury testimony regarding the dates and frequency of sexual abuse could have damaged her credibility.

A trial court does not abuse its discretion when it denies access to grand jury testimony of a witness where the only claim of particularized need consists of an assertion that the defendant needs to examine the testimony for inconsistencies which can be used to impeach that witness. *State v. Henness* ( Feb. 6, 1996), Franklin App. No. 94APA02-240, citing *State v. Mack* (1995), 73 Ohio St.3d 502, 653 N.E.2d 329; *State v. Tillman*, Butler App. No. CA2003-08-185, 2004-Ohio-1030, at ¶ 8. This argument could be made in every case and would allow disclosure of virtually all grand jury testimony. *State v. Leach* (Feb. 20, 2001), Clermont App. No. CA2000-05-033, citing *State v. Webb* (1994), 70 Ohio St.3d 325, 337, 638 N.E.2d 1023.

Appellant's desire for J.S.'s grand jury testimony is based on claimed inconsistencies between such testimony and her trial testimony. The trial court found no such inconsistencies. The trial court did not abuse its discretion by declining to provide appellant with the grand jury testimony, as his claim did not demonstrate a particularized need for the testimony. Appellant's seventh assignment of error is overruled.

*State v. Crosky*, 2008 WL 169346, at *27-28. This Court concludes that, because Petitioner can no longer present a claim under *Brady* to the state appellate court under Ohio's doctrine of *res judicata*, Petitioner has waived any *Brady* claim. Moreover, Petitioner did not preserve a *Brady* claim by raising the issue, in the first instance, in his appeal to the Ohio Supreme Court. The Ohio Supreme

28

Court does not ordinarily consider claims not first raised in the appellate court below.  *See Fornash v. Marshall*, 686 F.2d 1179, 1185 n. 7 (6th Cir.1982) (citing *State v. Phillips*, 27 Ohio St.2d 294, 302 (1971)); *Brown v. Voorhies*, No. 2:07-CV-00014, 2009 WL 187830, at *8 (S.D. Ohio Jan. 26, 2009)(citations omitted).

In claim ten, Petitioner asserts, *inter alia*, that the trial court's imposition of <u>maximum</u> consecutive terms of incarceration at his re-sentencing hearing violated the Ex Post Facto Clause and due process.  He also asserts that he was denied the effective assistance of counsel because his attorney failed to object to the imposition of maximum consecutive terms of incarceration at the re-sentencing hearing.  Again, however, Petitioner failed to raise these issues on appeal to the Ohio Supreme Court.  Instead, he argued only that the trial court had unconstitutionally imposed <u>consecutive</u> terms of incarceration.  *See Exhibit 39 to Return of Writ.*  Because Petitioner may now no longer present his claim that the trial court unconstitutionally imposed maximum terms of incarceration, this claim is waived.  However, Petitioner has preserved for review in these proceedings his claim that the trial court unconstitutionally imposed consecutive terms of incarceration.

In sum, Petitioner has waived claim four, except to the extent that he asserts that the evidence was constitutionally insufficient to sustain his convictions on child endangering; claim six; claim nine; and claim ten, except to the extent that he asserts that the trial court unconstitutionally imposed consecutive terms of incarceration.  He may still obtain review of these claims on the merits, if he can establish cause for his procedural defaults as well as actual prejudice from the alleged constitutional violations.  However, Petitioner has failed to establish cause or prejudice for his procedural defaults.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. at 491; *see also Sawyer v. Whitley,* 505 U.S. 333 (1992). After review of the record, the Court does not deem this to be such a case.

## CLAIM TWO

In claim two, Petitioner asserts that the trial court improperly denied him the right to hire his attorney of choice. The state appellate court rejected this claim as follows:

> Appellant contends in his first assignment of error that the trial court violated his constitutional right to counsel when it disqualified his privately retained attorney of choice. We disagree.
>
> " '[T]he standard of review for determining whether the court erred in its pretrial disqualification of defense counsel is whether it abused its broad discretion.'" *State v. Keenan* (1998), 81 Ohio St.3d 133, 137, 689 N.E.2d 929, quoting *State ex rel. Keenan v. Calabrese* (1994), 69 Ohio St.3d 176, 180, 631 N.E.2d 119. In reviewing the trial court's action, we must always keep in mind the context in which the ruling is made, and that " '[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict.'" *Serra v. Michigan Dept. of Corr.* (C.A.6, 1993) 4 F.3d 1348, 1354, quoting *Wheat v. U.S.* (1988), 486 U.S. 153, 162-163, 108 S.Ct. 1692, 100 L.Ed.2d 140.
>
> The Sixth Amendment to the United States Constitution guarantees that a criminal defendant shall have the assistance of counsel for his defense. *Wheat,* at 158. The "aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.* There is a presumptive right to employ one's own counsel. *Keenan,* at 137, 689 N.E.2d 929. That presumption may be overcome by a showing of an actual or serious potential for conflict. *Id.,* citing *Wheat.*
>
> Shaw initially represented both appellant and Julie Crosky. He subsequently withdrew from representing Julie Crosky but continued to represent appellant. Julie Crosky, after dismissing several attorneys, ultimately hired Shaw's partner, Miller, to represent her. Shaw

30

informed the trial court that, although he represented appellant and Miller represented Julie Crosky, they had participated in joint "strategy sessions." Thereafter, Shaw and Miller represented to the trial court that they were jointly representing appellant and Julie Crosky. Julie Crosky ultimately decided to seek new representation. Shaw continued to represent appellant, although the trial court cautioned him that it was still concerned about the potential conflict of interest. Ultimately, the trial court disqualified Shaw from representing appellant.

When the trial court disqualified Shaw, he no longer represented Julie Crosky. Thus, the situation was one of successive, not joint, representation. Successive representation occurs when counsel has previously represented a co-defendant or witness. *McFarland v. Yukins* (C.A.6, 2004), 356 F.3d 688, 701, citing *Moss v. U.S.* (C.A.6, 2003), 323 F.3d 445, 459. Successive representation may give rise to an actual conflict of interest. *Moss,* at 459; *U.S. v. Culp* ( M.D. Fla., 1996), 934 F.Supp. 394, 397-398. A conflict of interest may arise in a successive representation situation where (1) counsel's earlier representation of the witness or co-defendant was substantially and particularly related to counsel's later representation of defendant; or (2) counsel actually learned particular confidential information during the prior representation of the witness or co-defendant that was relevant to defendant's case. *Enoch v. Gramley* (C.A.7, 1995), 70 F.3d 1490, 1496, citing *Smith v. White* (C.A.11, 1987), 815 F.2d 1401, 1405; *U.S. v. Canty* (E.D.Mich., 2006), No. 01-80571, 2006 WL 3469625.

Appellant claims that there was no evidence demonstrating even a potential conflict of interest in Shaw's representation. We disagree. There was clearly a serious potential conflict of interest inherent in Shaw's representation of appellant given Shaw's past representation of appellant's co-defendant in the same matter. In *Keenan,* the Supreme Court of Ohio found a potential conflict of interest when attorneys who had previously represented Keenan's co-defendant in litigation arising from the same set of facts sought to later represent Keenan. *Keenan,* at 136-137; *see, also, U.S. v. Shwayder* (C.A.9, 2002), 312 F.3d 1109, 1118 (actual conflict where former representation of codefendant arose from matters directly concerned with attorney's current representation of defendant).

Here, Shaw and his law partner represented appellant's co-defendant, Julie Crosky, in litigation arising from the same set of facts. Shaw acknowledged that he, Miller, appellant, and Julie Crosky had met and

discussed defense strategy. His previous representation of Julie Crosky in this same matter, therefore, was substantially and particularly related to his ongoing representation of appellant. Thus, there was a potential conflict of interest if the trial court permitted Shaw to continue to represent appellant in this matter. *See In re Smith*, Ashtabula App. No.2005-A-0048, 2007-Ohio-893, at ¶ 67 (no abuse of discretion disqualifying mother's attorney who previously represented minor child in the case).

Additionally, Shaw might have learned confidential information from Julie Crosky during his representation of her or when he and Miller jointly represented both of the Croskys. *Id.* at ¶ 66. Shaw would still have an ethical obligation to Julie Crosky to maintain those confidences.[FN5] *See Serra, supra*, at 1352 (disqualification of counsel who previously represented co-defendant wife); *U.S. v. Pizzonia* (E.D.N.Y., 2006), 415 F.Supp.2d 168, 178, quoting *U.S. v. Cunningham* (C.A.2, 1982), 672 F.2d 1064, 1072 ("A serious conflict warranting disqualification may arise if the attorney is 'potentially in a position to use privileged information obtained during prior representation' of the former client."). It is possible that some of that information may have exculpated appellant while harming Julie Crosky's case, yet Shaw would be prohibited from using that information. *Serra; see, also, Culp,* at 397-398 ("Because of the lawyer's continuing duty of confidentiality, [successive representation] of more than one defendant charged in the same criminal conspiracy inevitably presents a conundrum for the lawyer who is so engaged.").

[FN5] At trial, Julie Crosky refused to waive the attorney-client privilege concerning her conversations with Shaw.

It is not enough to argue, as appellant does, that no conflict existed because plea negotiations had not been reopened with Julie Crosky, she continued to request a joint defense, and she was not likely to become a state's witness against appellant. The future events in this case were uncertain, and the trial court was faced with this decision months before any testimony was presented at trial. "A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants." *Wheat,* at 163.

Because of the serious potential conflict of interest arising from Shaw's ongoing representation of appellant following his representation of appellant's co-defendant in the same matter, the

32

trial court did not abuse its discretion when it disqualified Shaw from representing appellant.[FN6] Appellant's first assignment of error is overruled.

[FN6] For the same reasons, the trial court did not abuse its discretion by failing to accept appellant's waiver of any conflict of interest. *Wheat,* at 163 ("[W]e think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest.").

*State v. Crosky,* 2008 WL 169346, at *7-9.

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) provides:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

33

The United States Court of Appeals for the Sixth Circuit has summarized this standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from the Supreme Court's decisions but unreasonably applies it to the facts of the petitioner's case.

*Boykin v. Webb,* 541 F.3d 638, 642 (6th Cir. 2008) (quoting *Williams v. Taylor,* 529 U.S. 362 (2000)).  *See also Cullen v. Pinholster,* – U.S. –, 131 S.Ct. 1388, 1399 (2011)(If the state court decision "identifies the correct governing legal principle" in existence at the time, a federal court must assess whether the decision "unreasonably applies that principle to the facts of the prisoner's case")(citing *Williams*, at 413).  Petitioner has failed to meet this standard here.

The Sixth Amendment guarantees the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *McMann v. Richardson,* 397 U.S. 759, 771 n. 14 (1970). This right encompasses the "right of a defendant who does not require appointed counsel to choose who will represent him" *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988); *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). However, "[t]o be sure, the right to counsel of choice 'is circumscribed in several important respects.' " *United States v. Gonzalez-Lopez,* 548 U.S. at 144 (quoting *Wheat v. United States*, 486 U.S. at 159).

> [T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them. *See Wheat*, 486 U.S., at 159, 108 S.Ct. 1692, 100 L.Ed.2d 140; *Caplin & Drysdale*, 491 U.S., at 624, 626, 109 S.Ct. 2646, 105 L.Ed.2d 528. Nor may a defendant insist on representation by a person who is not a member of the bar, or demand that a court honor his waiver of

34

> conflict-free representation. *See Wheat*, 486 U.S., at 159-160, 108 S.Ct. 1692, 100 L.Ed.2d 140. We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, *id.*, at 163-164, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140, and against the demands of its calendar, *Morris v. Slappy,* 461 U.S. 1, 11-12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). The court has, moreover, an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat, supra*, at 160, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140.

*United States v. Gonzalez-Lopez*, 548 U.S. at 151-52. Thus, the trial court was not constitutionally required to accept Petitioner's waiver of conflict free counsel. Additionally, a criminal defendant has no constitutional right to be represented by a particular attorney. *Serra v Michigan Department of Corrections*, 4 F.3d 1348, 1351 (6th Cir. 1993)(citing *Caplin & Drysdale v. United States*, 491 U.S. 617, 624 (1989). The presumption in favor of a criminal defendant's right to hire an attorney of his own choosing "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *Id.* at 1351 (citing *Wheat*, 486 U.S. at 164). Plainly, the record in this case reflects that Attorney Shaw had a serious potential conflict in his continued representation of Petitioner, in view of his prior representation of Petitioner's wife and co-defendant. The trial court's refusal to permit Shaw's continued representation of Petitioner was not constitutionally prohibited.

Claim two is without merit.

### CLAIM THREE

In claim three, Petitioner asserts that the trial court improperly accepted his waiver of the right to counsel. The state appellate court rejected his claim as follows:

[A]ppellant contends that the trial court did not make a sufficient inquiry into his decision to waive his right to counsel and to represent himself at trial. We disagree.

A criminal defendant has a constitutional right to represent himself at trial. *State v. Johnson*, 112 Ohio St.3d 210, 858 N.E.2d 1144, 2006-Ohio-6404, at ¶ 89. A defendant may proceed without counsel if the defendant has made a knowing, voluntary, and intelligent waiver of the right to counsel. *State v. Martin,* 103 Ohio St.3d 385, 816 N.E.2d 227, 2004-Ohio-5471, at ¶ 24; *see, also,* Crim.R. 44(A) (defendant may forgo counsel after, being fully advised, knowingly, intelligently, and voluntarily waives right to counsel).

To establish an effective waiver of the right to counsel, the trial court must make a sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right. *Johnson,* quoting *State v. Gibson* (1976), 45 Ohio St.2d 366, 345 N.E.2d 399, paragraph two of the syllabus; *Martin,* at ¶ 39 ("[t]he trial court must demonstrate substantial compliance with Crim.R. 44(A) by making a sufficient inquiry to determine whether the defendant fully understood and intelligently relinquished his or her right to counsel."). To be valid, a waiver of the right to counsel must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. *Id*. at ¶ 43, 816 N.E.2d 227; *Gibson*, at 377, 345 N.E.2d 399, quoting *Von Moltke v. Gillies* (1948), 332 U.S. 708, 723, 68 S.Ct. 316, 92 L.Ed. 309; *State v. Suber*, 154 Ohio App.3d 681, 798 N.E.2d 684, 2003-Ohio-5210, at ¶ 15.

After the trial court disqualified appellant's attorney, he requested to proceed without counsel. The trial court questioned him about this choice. Appellant admitted that he knew he had a right to have a lawyer and that the trial court would appoint a lawyer for him if he could not afford one. The trial court explained to appellant the consequences of his decision, noting that appellant would be held to the same standard as a lawyer, including compliance with the rules of procedure and evidence. The trial court cautioned appellant that it could not provide him with legal assistance.

The trial court then asked appellant if he understood the charges

36

pending against him. Appellant stated that he was "fully aware of those charges." The trial court asked appellant if he was aware that the penalties for those charges included a term of life imprisonment. Appellant responded in the affirmative. Appellant also stated that he was aware the sentences for the charges could be ordered to be served consecutively. The trial court also asked appellant if he knew what defenses might exist to the charges. Appellant replied that he "had plenty of answers to their charges."

After hearing additional warnings about proceeding without counsel, including the trial court's admonition that "in almost every case it would be my opinion that a trained lawyer would defend you far better than you could defend yourself," appellant signed a form entitled "Waiver of Right to an Attorney" that listed the charges against him and the maximum penalties for each charge. He acknowledged in the form that he had a constitutional right to counsel but that he knowingly, intelligently, and voluntarily waived that right. With that, the trial court allowed appellant to proceed pro se, although it appointed stand-by counsel for appellant.

Appellant now claims the trial court failed to explain his possible defenses after he expressed confusion about them. However, the record does not reflect that appellant expressed any confusion about his defenses.[FN7] Appellant told the trial court that he had plenty of answers to the charges. The only concern he expressed was his ability to properly present those defenses. Appellant expressly recognized that proceeding without counsel might make it more difficult to present his defenses. Nevertheless, appellant chose to proceed without counsel. Moreover, contrary to appellant's assertion, a trial court is not required to advise a defendant of all available defenses or mitigating circumstances. A broader discussion of defenses and mitigating circumstances as applicable to the present charges is sufficient. *State v. Trikilis*, Medina App. No. 04CA0096-M, 2005-Ohio-4266, at ¶ 13; *In re McDonald,* Licking App. No. 06-CA-46, 2007-Ohio-2324, at ¶ 39.

[FN7] Contrary to appellant's suggestion, the trial court did not assume that he lacked an understanding of defenses or mitigating evidence. The trial court stated that it assumed that appellant did not understand that his failure to raise any available defenses or his failure to properly introduce those defenses could not be used as grounds for an appeal. Appellant assured the trial court that he did understand that.

37

> Appellant also claims the trial court should have inquired about his educational background and prior experience with the criminal justice system. We disagree. Although a court may consider a defendant's age, education, and legal experience in making this decision, a trial court is not required to take these factors into consideration. *Trikilis,* at ¶ 13, citing *State v. Doane* (1990), 69 Ohio App.3d 638, 647, 591 N.E.2d 735. Nor does appellant demonstrate how these factors would have influenced the trial court's decision.
>
> Appellant clearly and adamantly expressed his desire to represent himself at trial. *See State v. Julian*, Williams App. No. WM-06-009, 2007-Ohio-3568, at ¶ 57, citing *Johnson,* supra (noting that defendant's lack of confusion about what he wanted supported sufficiency of inquiry). The trial court assured itself that appellant knew of the dangers and disadvantages of self-representation, and that he was aware of the charges against him, the possible penalties, and available defenses. The trial court's inquiry of appellant was sufficient to determine that appellant's decision to represent himself was a voluntary, knowing, and intelligent choice. Appellant's second assignment of error is overruled.

*State v. Crosky,* 2008 WL 169346, at *9-11.  Again, the factual findings of the state appellate court are presumed to be correct.  28 U.S.C. §2254(e).  Further, the record fails to demonstrate a basis for federal habeas corpus relief.  *See* 28 U.S.C. § 2254(d).

A criminal defendant has the right to waive the assistance of counsel and represent himself at trial.  *Faretta v. California*, 422 U.S. 806 (1975).  "When a defendant chooses to effectuate the right of self-representation, he foregoes. . . the benefits associated with representation by legal counsel."  *Fowler v. Collins*, 253 F.3d 244, 249 (6th Cir. 2001)(citing *Faretta*, 422 U.S. at 834.)  To exercise this right, he must knowingly and intelligently waive his right to counsel.  The trial court should advise him of "the dangers and disadvantages of self representation so the record will establish that 'he knows what he is doing and his choice is made with eyes open.'"  *Id.* (*quoting Adams v. United States ex rel. McCann*, 317 U.S. at 279.  To

38

discharge this duty, the trial court "must investigate as long and as thoroughly as the circumstances of the case before him demand." *Von Moltke v. Gillies*, 332 U.S. 708, 723-24 (1948).

> To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

*Id*. at 724. "The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer." *Carnley v. Cochran*, 369 U.S. 506, 516 (1962). "[A] trial court's outright failure to explain the risks and dangers in proceeding *pro se* or a failure to adequately examine the waiver will justify issuing a writ of habeas corpus." *Wilson v. Parker*, 515 F.3d 682, 695 (6th Cir. 2008)(citations omitted).

The record fails to support Petitioner's claim. After the removal of Petitioner's retained counsel due to the potential conflict of interest, Petitioner requested to represent himself. He expressly stated that he did not want a court-appointed attorney. *Trial Transcript,* September 29, 2005, at 18-19. The trial court advised Petitioner of his right to a court-appointed attorney free of cost who would have experience in handling criminal matters and, in particular, criminal jury trials. *Id.* at 19. Petitioner nonetheless chose to exercise his right to self-representation:

> COURT: Have you thought this matter through and are you certain you wish to proceed without a lawyer?
>
> MR. CROSKY: Yes, Your Honor.
>
> COURT: Do you understand that a lawyer has experience in handling criminal matters and, in particular, handling criminal jury trials?
>
> MR. CROSKY: Yes, your Honor.

39

COURT: You understand that a defendant who represents himself may impart to the jury a negative feeling since the lawyer will not be here representing him.

MR. CROSKY: Yes, sir.

COURT: You understand that you will be held to the same Rules of Evidence that binds any lawyer that represents a client in the court in a similar type case?

MR. CROSKY: Yes, Your Honor.

COURT: Have you ever represented yourself previously in a criminal action?

MR. CROSKY: No, sir, I have not.

COURT: Do you have any educational background in legal matters?

MR. CROSKY: No, sir, I do not.

COURT: Are you familiar with the Rules of Criminal Procedure in this state?

MR. CROSKY: No, sir.

COURT: Do you understand that these rules can control the way a criminal action proceeds through the court system?

MR. CROSKY: Yes, sir.

COURT: Do you understand that you will be bound by the same rules as anyone else that would be involved in a similar matter?

MR. CROSKY: Yes, sir, I do.

COURT: You understand that you will be held to the same standard as any lawyer that might appear in a similar matter representing a client?

MR. CROSKY: Yes, Your Honor.

COURT: Are you familiar with the Rules of Evidence that are in

effect?

MR. CROSKY: No, sir.

COURT: You understand that these rules control what evidence may be introduced at any trial?

MR. CROSKY Yes, sir.

COURT: You understand that you will be required to follow these rules the same as any other person that would appear in court?

MR. CROSKY: Yes, sir, I do.

COURT: You understand that the rules we follow may make it difficult for you to ask questions in a way that. . . you may like to ask them?

MR. CROSKY: Yes.

***

COURT: You know, lawyers go to school at least three years after college.  Then they have to go into practice before they come into court, and there's the state bar exam that lasts three days.

CROSKY: Yes.

COURT: You understand the Court will not function as your lawyer?

MR. CROSKY: Yes, sir.

COURT: I will not be providing you any legal assistance; do you understand that?

MR. CROSKY: (Nodding.)

COURT: You will be required to follow the same rules as the prosecutor in this case.

MR. CROSKY: Yes, sir.

COURT: You understand that the fact that you lack personal

41

> knowledge of the Rules of Procedure or the Rules of Evidence will
> not be a reason for the Court to ignore those rules.
>
> MR. CROSKY: Yes, sir, I understand that.
>
> COURT: Do you understand that if you represent yourself you
> will give up the right to later claim that you did not have effective
> and proper legal counsel?
>
> MR. CROSKY: Yes, I understand that.

*Id.* at 19-22.  The trial court advised Petitioner that he was charged with eight first degree felony

counts of rape, one second degree felony count of child endangering, seven third degree felony

counts of gross sexual imposition, and one fourth degree felony count of disseminating matters

harmful to juveniles.  *Id.* at 22-23.  At all times Petitioner indicated that he understood.  He asked

no questions.   The Court further advised Petitioner that he faced the possibility of life

imprisonment – up to eight consecutive terms of life imprisonment.  *Id.* at 23.  Petitioner stated,

"I'm fully aware of that."  *Id.*

> COURT: Very good.  I've already asked, do you understand that
> when you represent yourself you are on your own, I cannot tell
> you or advise you on how you should try your case?
>
> MR. CROSKY: Yes, I understand that.
>
> COURT: You understand you will be treated no differently than
> if you had a lawyer representing you?
>
> MR. CROSKY: That's correct.  I understand that.
>
> COURT: Do you know what defenses there might be to the
> charges which you face?
>
> MR. CROSKY: Legal defenses or defenses regarding our answers
> to their charges?
>
> COURT: You tell me.

MR. CROSKY: We have plenty of answers to their charges. The legal aspect, the protocol, the proper procedure presenting those answers is the one disadvantage that we have.

\*\*\*

COURT: . . . You are representing yourself. You are going to be your own lawyer on this case. I'm not going to [] advise you. I'm [not] going to say whether [a] question is acceptable or not, whether it's allowed or not.

MR. CROSKY: Okay.

COURT: You understand?

MR. CROSKY: Yes.

COURT: So based upon your answer, I'm assuming then that you do not understand that there may be certain affirmative defenses or mitigating evidence and that your lack of knowledge of their existence or the lack of knowledge of the appropriate procedure for introducing evidence on these issues . . . you understand that that will not be a ground for any appeal on your behalf?

MR. CROSKY: Yes, I do.

*Id*. at 23-25.

COURT:  You understand that an attorney may be aware of the ways of defending these particular charges that may not occur to you since you are not a lawyer?

MR. CROSKY: I could assume that to be true, yes.

\*\*\*

COURT: You understand your right not to incriminate yourself and your right to remain silent?

MR. CROSKY: Yes sir.

COURT: Do you understand it may be much easier for an attorney to contact potential witnesses on your behalf and to gather evidence on your behalf and to question witnesses on your behalf

43

than it may be for you?

MR. CROSKY: . . . I have found that to be very true.

COURT: You understand it may be much easier for an attorney to provide legal research on legal questions that may come before the Court than for you to do so on your own?

MR. CROSKY: Yes, sir.

*Id*. at 26-27.

COURT: I want to advise you at this time that in almost every case it would be my opinion that a trained lawyer would defend you far better than you could defend yourself. It's . . . always unwise of a defendant on trial to try to represent himself.

You are not familiar with the law. You are not familiar with handling a trial. You are not familiar with court procedures. You are not familiar with the Rules of Evidence. I would strongly urge you not to try to represent yourself.

\*\*\*

You understand . . . that a person that represents themselves, there's the potential of a fool somewhere, either the client or the lawyer, when you are representing yourself. Have you heard of that?

\*\*\*

Do you understand it?

MR. CROSKY: I understand the statement.

COURT: Do you understand the rationale. . . the meaning of the statement?

MR. CROSKY: It is their idea, and it's one of our most cherished rights as a democratic citizen of our country.

COURT: To be able to represent yourself.

MR. CROSKY: Yes, sir.

*Id*. at 27-29.

> COURT: In light of the penalties that you might suffer if you are found guilty and in light of all the difficulties of representing yourself, do you still desire to represent yourself and to give up your right to be represented by a lawyer?
>
> MR. CROSKY: Very much so, I do, sir.
>
> COURT: Are you making this decision freely and does it reflect your personal desire?
>
> MR CROSKY: Yes, it does.  Yes, I do.
>
> COURT: Do you have any questions of me you wish me to clarify or explain anything further that we have discussed here?
>
> MR. CROSKY: No, sir.

*Id.* at 31-32.  At Petitioner's request, the trial court appointed stand-by counsel to assist him and scheduled the trial date five months later.  *Id.* at 32-33.  The Court informed Petitioner that he could change his mind and request to be represented by a court-appointed attorney at any time prior to trial.  *Id*. at 47.  On the first day of trial, Petitioner again affirmed that he did not desire representation by an attorney. *Trial Transcript*, March 20, 2006, at 5-6.

Thus, the record reflects that Petitioner knowingly and intelligently waived his right to counsel.  Any over-estimation of the potential sentence Petitioner faced does not alter Petitioner's waiver of his right to counsel.  The record indicates that Petitioner well understood the gravity of the charges against him. Moreover, the trial court thoroughly advised Petitioner of the consequences and dangers of proceeding *pro se*, the reasons for the removal of Attorney Shaw, and the fact that any state-appointed attorney would be working solely on Petitioner's behalf.  Still, Petitioner decided to represent himself at trial.  The record reflects no constitutional error in this regard.

Claim three is plainly without merit.

## CLAIM FOUR

In claim four, Petitioner asserts that the evidence was constitutionally insufficient to sustain his conviction on child endangering.  The state appellate court rejected this claim as follows:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
>
> ***
>
> Whether the evidence is legally sufficient is a question of law, not fact. *Thompkins,* at 386, 678 N.E.2d 541. Indeed, in determining the sufficiency of the evidence, an appellate court must "give full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.*" Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 767 N.E.2d 216, 2002-Ohio-2126, at ¶ 79; *State v. Thomas* (1982), 70 Ohio St.2d 79, 80, 434 N.E.2d 1356. A jury verdict will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact.  *State v. Treesh* (2001), 90 Ohio St.3d 460, 484, 739 N.E.2d 749; *Jenks,* at 273, 574 N.E.2d 492.
>
> ***
>
> We next examine the sufficiency of the evidence supporting appellant's conviction for child endangering. In order to be convicted of child endangering, the State had to prove that

46

appellant enticed, coerced, permitted, encouraged, compelled, hired, employed, used, or allowed J.S., who was under 18 years of age, to act, model, or in any other way participate in, or be photographed for, the production, presentation, dissemination, or advertisement of any material or performance that appellant knows or reasonably should know is obscene, is sexually-oriented matter, or is nudity-oriented matter. R.C. 2919.22(B)(5).

"Nudity-oriented matter" is defined as any material or performance that shows a minor in a state of nudity and that, taken as a whole by the average person applying contemporary community standards, appeals to prurient interest. R.C. 2919.22(D)(4)(b).

Appellant contends that because J.S. did not testify precisely when these pictures were taken, and because the alleged photographs were never produced, his conviction is not supported by sufficient evidence. We disagree.

In count 8, the State alleged that between August 1, 1999 and June 1, 2001, appellant recklessly encouraged, used, or allowed J.S., who was under 18 years of age, to be photographed for the production or dissemination of material that he knew or reasonably should have known was obscene, sexually-oriented matter, or nudity-oriented matter in violation of R.C. 2919.22. As already noted, it is not necessary for the State to prove the exact date and time of this offense. *See Frazier, supra*, at fn. 1; *State v. Geboy* (2001), 145 Ohio App.3d 706, 724, 764 N.E.2d 451. It is sufficient for the State to prove that the alleged offense occurred at or about the time charged. *Id*. This concept is more significant here, where the act complained of is not one of a series of acts over an extended period of time but, rather, is one act that either did or did not occur. J.S. testified that appellant requested nude pictures of her when he was working out of town as a flight attendant. Appellant worked out of town as a flight attendant sometime after he began dating Julie Crosky in April 1998. J.S. testified that she took these pictures after her brother was born in the end of 1998. She further testified that appellant's conduct began in the 5th grade and ended in the 8th grade, at the end of the time frame alleged. This testimony is sufficient evidence for the trier of fact to find that the nude pictures of J.S. were taken within the time frame set forth in count 8 of the indictment.

The photographs did not need to be admitted in order to find

47

appellant guilty of this count. *See State v. Stewart* (1996), 111 Ohio App.3d 525, 535-536, 676 N.E.2d 912 (affirming child endangering conviction based on victim's descriptions of photographs she was forced to take); *State v. Casto* (Sept. 13, 2000), Medina App. No. 2977-M (same). J.S. testified that after appellant asked for more nudity in the pictures, she took naked pictures of herself and pictures of her vagina. Her testimony describing the photographs is sufficient for a trier of fact to find that appellant encouraged J.S. to take nude pictures of herself and that the pictures were nudity-oriented material.

Appellant's child endangering conviction is supported by sufficient evidence.

*State v. Crosky,* 2008 WL 169346, at *16-17.

Before a criminal defendant can be convicted consistent with the United States Constitution, there must be sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To determine whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson,* at 319.) The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson,* at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume-even if it does not appear on the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Id*. (quoting *Jackson,* at 326).

As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference is due to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

48

doubt." Even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *See also White v. Steele*, 602 F.3d 707, 710 (6th Cir.2009). This is a substantial hurdle for a habeas corpus petitioner to overcome, and Petitioner has not done so here.

For the reasons detailed by the state appellate court, this Court agrees that, when viewing all of the evidence in the light most favorable to the prosecution, *See Jackson v. Virginia*, the evidence was constitutionally sufficient to sustain Petitioner's conviction on child endangering.

Claim four is without merit.

## CLAIM SEVEN

In claim seven, Petitioner asserts that, because the jury acquitted him of some of the charges included in an indictment reflecting multiple "undifferentiated counts charging the same crime[s]," due process and the Double Jeopardy Clause require all of his convictions to be vacated.  The state appellate court rejected this claim as follows:

> [A]ppellant contends that the not guilty verdicts on counts 2 and 3 constitute double jeopardy and are a due process bar to his convictions for the other counts of rape and GSI. We disagree.
>
> Appellant relies on *Issac v. Grider* (C.A.6, 2000), 211 F.3d 1269, an unpublished federal court of appeals decision, to support this assignment of error. His reliance is misplaced. In *Isaac,* the defendant was charged with a number of counts for the sexual abuse of four boys. Five of those counts alleged, with identical language, that Isaac committed sodomy by engaging in sexual intercourse with a boy under 14 between January and April 1994. Five other counts alleged, with identical language, that Isaac committed sexual abuse by engaging in sexual contact with a boy under 14 during the winter/spring of 1994. At trial, the trial court

apparently dismissed two of the sodomy counts and two of the
sexual abuse counts and instructed the jury on three duplicate
counts of sodomy and three duplicate counts of sexual abuse. The
jury found him guilty of those counts.

In his petition for habeas corpus, Isaac argued that given the
duplicative language of the counts, and the trial court's dismissal
of some of the counts, double jeopardy barred his convictions. The
court agreed, noting that because of the duplicative language in the
counts, it was possible that the jury convicted Isaac of conduct
reflected in the counts that the trial court had already dismissed.

In this case, there is no double jeopardy problem. Of the 17 counts
against appellant, count 2 was the only rape count and count 3 was
the only GSI count that alleged conduct occurring before July 31,
1998. It is clear that the jury did not believe appellant committed
any illegal conduct before July 31, 1998. This finding is based on
J.S.'s testimony that she did not meet appellant until April 1998,
and that the abuse did not start until the 5th grade. J.S. would not
have begun the 5th grade until the fall of 1998, which is after the
time period alleged in counts 2 and 3. Thus, there is no uncertainty
as to the basis for the jury's not guilty verdicts on those counts.
Nor are the acquittals on counts 2 and 3 inconsistent with the
guilty verdicts on the remaining counts.

*State v. Crosky*, 2008 WL 169346, at \*19-20.  Petitioner has failed to establish that the state

appellate court's decision is unreasonable so as to warrant federal habeas corpus relief.  28 U.S.C.

§ 2254(d), (e).  For the reasons discussed by the state appellate court, this Court agrees that

Petitioner has failed to establish a double jeopardy violation or a violation of due process based

on the jury's verdict of not guilty on counts two and three of the indictment, but guilty on the

remaining charges.

Claim seven is without merit.

## CLAIM EIGHT

In claim eight, Petitioner asserts that he was denied a fair trial because the trial judge was

biased against him and improperly limited his cross examination of the alleged victim.  In support

of this claim, Petitioner refers to what he contends were erroneous rulings of the trial court as

well as "intemperate judicial behavior" expressed towards him during trial.  The state appellate

court rejected this claim as follows:

> [A]ppellant claims the trial court improperly limited his time to
> cross-examine J.S. and limited his ability to call witnesses. Again,
> we disagree. Under Evid. R. 611(A), the trial court must "exercise
> reasonable control over the mode and order of interrogating
> witnesses and presenting evidence so as [to] (1) make the
> interrogation and presentation effective for the ascertainment of
> the truth, (2) avoid needless consumption of time, and (3) protect
> witnesses from harassment or undue embarrassment." Limiting "
> 'cross-examination lies within the sound discretion of the trial
> court, viewed in relation to the particular facts of the case. Such
> exercise of discretion will not be disturbed in the absence of a
> clear showing of an abuse of discretion.'" *State v. Treesh*, 90 Ohio
> St.3d 460, 480, 739 N.E.2d 749, quoting *State v. Acre* (1983), 6
> Ohio St.3d 140, 145, 451 N.E.2d 802. Abuse of discretion
> connotes more than an error of law or judgment; it implies that the
> court's attitude is unreasonable, arbitrary or unconscionable.
> *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450
> N.E.2d 1140.
>
> Appellant began his cross-examination of J.S. on March 22, 2006.
> The next day he continued his cross-examination of J.S. After an
> hour and a half of questioning, the trial court told appellant that his
> examination was going on too long and that he needed to ask his
> questions more specifically. At the end of the day, the prosecutor
> informed the trial court that appellant had been questioning J.S. for
> a total of seven hours. Even though appellant decided to end
> questioning on the 23rd, the trial court allowed him to further
> question her the next day. On that day, the prosecutor noted that
> J.S. had now been testifying for 13 hours. The trial court again
> instructed appellant that he needed to better formulate his
> questions so that the questioning did not last much longer. The
> trial court even allowed appellant to ask J.S. additional questions
> after his recross-examination. The trial court acted with a great
> deal of patience in dealing with appellant and did not abuse its
> discretion by ultimately limiting his time to question this witness
> after 13 hours of cross-examination.
>
> Additionally, contrary to appellant's contention, the trial court did

51

not imply that appellant had only two weeks to present his case. The trial court advised appellant that he should streamline his questions, which would help him in presenting his case. The trial court did not indicate that appellant's time to present his case would be terminated at the end of the jury's two-week service.

Fourth, appellant claims the trial court scolded him, displayed intemperate behavior toward him and was biased against him. The alleged improper, intemperate, and biased conduct by the trial court involved instances where the trial court sustained objections to appellant's conduct or attempted to instruct the appellant how to proceed. We find no improper, intemperate or biased conduct displayed by the trial court. Additionally, we specifically reject appellant's claim that the trial court disparaged appellant's hearing loss and "subtly suggested" that appellant faked his hearing loss. A reading of the portion of the transcript relied upon by appellant does not support appellant's claim.

*State v. Crosky*, 2008 WL 169346, at *23. Petitioner has failed to establish that the state appellate court's decision rejecting his claim was unreasonable, or that its factual findings were erroneous. 28 U.S.C. § 2254(d), (e).

"The Due Process Clause requires a defendant be given a 'fair trial in a fair tribunal,' before a judge who has no actual bias against the defendant or interest in the outcome of a case." *Felder v. Ohio Adult Parole Authority,* 2009 WL 3763067 (N.D. Ohio Nov. 9, 2009)(citing *Bracy v. Gramley,* 520 U.S. 899, 904-905 (1997); *Getsy v. Mitchell*, 495 F.3d 295, 311 (6th Cir. 2007). "Neither judicial 'expressions of impatience, dissatisfaction, annoyance, and even anger,' nor judicial remarks 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases,' support a bias or partiality challenge." *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. at 555.

Petitioner's conclusory allegations are without record support. Petitioner does not refer

to, and this Court is unable to locate, anything in the trial record demonstrating a judicial bias of constitutional dimension.  Further, the state appellate court affirmed the evidentiary ruling that Petitioner contends supports this claim.

Claim eight is without merit.

## CLAIM TEN

In claim ten, Petitioner asserts that the trial court unconstitutionally imposed consecutive terms of incarceration after the Ohio Supreme Court's decision in *State v. Foster* 109 Ohio St.3d 1 (2006)(excising unconstitutional fact-finding provisions of Ohio's sentencing statutes), and that he was denied the effective assistance of counsel because his attorney failed to object to his sentence on this basis.  The state appellate court rejected this claim as follows:

> Appellant contends in his eighth assignment of error that the Supreme Court of Ohio's severance remedy in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856, as applied to his case, violated due process and ex post facto principles against retroactivity and that trial counsel was ineffective for failing to raise this argument in the trial court. We disagree.
>
> This court has repeatedly rejected due process and ex post facto arguments against the *Foster* court's severance remedy. *State v. Ragland*, Franklin App. No. 04AP-829, 2007-Ohio-836, at ¶ 9; *State v. Pruitt*, Franklin App. No. 06AP-1184, 2007-Ohio-2331, at ¶ 5; *State v. Horton*, Franklin App. No. 06AP-311, 2007-Ohio-4309, at ¶ 68. Additionally, because the *Foster* court's remedy does not violate ex post facto principles, appellant's counsel was not ineffective for failing to raise an objection on those grounds. *Id*. at ¶ 50, 845 N.E.2d 470; *Pruitt*, at ¶ 8. Appellant's eighth assignment of error is overruled.

*State v. Crosky,* 2008 WL 169346, at 28.

In *Hooks v. Sheets,* 603 F.3d 316, 320-21 (6th Cir. 2010), the United States Court of Appeals for the Sixth Circuit rejected the argument now presented by Petitioner:

The Ex Post Facto Clause prohibits a state from passing a law that (1) criminalizes an action done before the law was passed, which was innocent when done, (2) " 'aggravates a crime, or makes it greater than it was, when committed,' " (3) " 'changes the punishment' " to inflict greater punishment than the law provided when the crime was committed, or (4) " 'alters the legal rules of evidence' " so that less or different testimony is required than at the time the offense was committed. *Rogers v. Tennessee*, 532 U.S. 451, 456, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) (quoting *Calder v. Bull*, 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798)). The Ex Post Facto Clause, however, provides by its terms that it is applicable only to acts of the Legislature, and " 'does not of its own force apply to the Judicial Branch of government.'" *Id.* (quoting *Marks v. United States*, 430 U.S. 188, 191, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977)). Nevertheless, the "limitations on ex post facto judicial decisionmaking are inherent in the notion of due process." *Id.* Consequently, the principles of the Ex Post Facto Clause apply to the courts through the Due Process Clause. *See id.* at 457. Because these principles are viewed through the lens of due process in the judicial context, the constitutionality of judicial action turns on the traditional due process principles of "notice, foreseeability, and, in particular, the right to fair warning," rather than the specific prescriptions of the Ex Post Facto Clause. Id. at 458-59.

A state's statutory scheme does not violate the Sixth Amendment simply because it constrains the ability of courts to impose consecutive sentences to situations in which the court has found specific facts. *Oregon v. Ice*, 555 U.S. 160, ----, 129 S.Ct. 711, 714-15, 172 L.Ed.2d 517 (2009). Instead, a state may allow courts unfettered discretion to impose consecutive sentences or it may limit that authority without violating the Sixth Amendment. *Id.* At the time Hooks committed his crimes, Ohio permitted the court to impose consecutive rather than concurrent sentences if it found particular facts, *see* OR § 2929.14(E)(4), and explained its "reasons for imposing the consecutive sentences," OR § 2929.19(B)(2)(c). The Ohio Supreme Court nevertheless determined that these statutory provisions violated *Blakey* because they allowed the imposition of longer sentences-consecutive sentences-based upon judicial factfinding. *Foster,* 845 N.E.2d at 491.

Regardless of the court's determination in *Foster,* the maximum sentence to which Hooks was constitutionally subject

> contemplated consecutive sentences. Hooks would have the court calculate his maximum sentence as being imposed concurrently based solely on the facts found by a jury at the time of sentencing, because he argues that this calculation is mandated by *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). However, *Apprendi* does not limit the calculation of Hooks's potential sentence to concurrent sentences when the judicial fact-finding here is allowed under *Ice*. Thus, Hooks was initially and constitutionally subject to consecutive sentences according to the "guided discretion" of the court. *See Foster*, 845 N.E.2d at 495. Moreover, Hooks was always aware of the potential for consecutive sentences. On re-sentencing post- Foster he remained subject to consecutive sentences within the discretion of the court. Since Hooks was always subject to consecutive rather than concurrent sentences in the discretion of the trial court, his re-sentencing under *Foster* did not raise ex post facto or due process concerns. We need not reach the broader question of whether re-sentencing under *Foster* ever violates the Due Process or Ex Post Facto Clauses because *Foster's* application in Hooks's case does not do so.

*Id*., at 320-21. Further, Petitioner's argument has been repeatedly rejected by state and federal courts, including this Court. *See, e.g., Smith v. Brunsman*, 626 F.Supp.2d 786, 793-95 (S.D. Ohio 2009) (application of *Foster* violates neither the due process nor the ex post facto clauses).

Petitioner was aware that he faced consecutive, maximum sentences for his crimes. He faced the same sentencing ranges both prior to and after *Foster*. The trial court's imposition of consecutive terms of incarceration after *Foster* did not violate the Due Process or Ex Post Facto Clauses. Petitioner therefore has likewise failed to establish the ineffective assistance of counsel as set forth in *Strickland* based on his attorney's failure to raise such issue at sentencing.

Claim ten is without merit.

**WHEREUPON, IT IS ORDERED** that Petitioner's motion to amend (Doc. 27) and request for an evidentiary hearing and for a stay of proceedings (*see* Doc. 29) are **DENIED**. Respondent's motion to strike Petitioner's second supplemental memorandum (Doc. 33) is

**DENIED**.

**IT IS RECOMMENDED** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation* de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

  *s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge

May 11, 2011